Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| RENTOKIL OF PUERTO RICO, INC.<br><br>PETICIONARIA<br><br>V.<br><br>LUIS RODRÍGUEZ FERNÁNDEZ<br><br>RECURRIDO | TA2026CE00259 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2025CV01533<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de marzo de 2026.

### I.

El 3 de marzo de 2026, la compañía Rentokil de Puerto Rico, Inc. (Rentokil o peticionaria), presentó digitalmente, por conducto de su representación legal, una *Petición de Certiorari* en la que nos solicitó que revoquemos la *Resolución y Orden Protectora* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario), el 20 de febrero de 2026, notificada y archivada digitalmente en autos el mismo día.[1] Mediante el dictamen, el TPI declaró No Ha Lugar la solicitud de la peticionaria para que se ordenara, como parte del descubrimiento de prueba, la producción del listado taxativo de clientes e información relacionada por parte del señor Luis Rodríguez Fernández (señor Rodríguez Fernández o recurrido) sobre su negocio. Además, el foro primario emitió una orden protectora sobre dicha información en manos del recurrido.

---

[1] Véase entrada núm. 50 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

El 4 de marzo de 2026, emitimos una *Resolución* en la que le concedimos al recurrido hasta el 13 de marzo de 2026 para exponer su posición sobre los méritos del recurso.[2]

El 12 de marzo de 2026, el señor Rodríguez Fernández presentó un *Alegato en Oposición al Recurso de Ce[r]tiorari* en el que nos solicitó que deneguemos la expedición del recurso.[3]

El 18 de marzo de 2026, la peticionaria presentó una *Réplica al Alegato en Oposición al Recurso de Certiorari* en la que reiteró su solicitud para que expidamos el auto peticionado y revoquemos la *Resolución y Orden Protectora* recurrida.[4]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes para su atención.

**II.**

El caso de marras tuvo su génesis el 11 de noviembre de 2025, cuando la peticionaria presentó una demanda sobre incumplimiento de contrato, solicitud de entredicho provisional, *injunction* preliminar e *injunction* permanente en contra del recurrido.[5] En la misma, alegó que suscribió un contrato de empleo con el recurrido, en el cual se estableció una cláusula sobre interferencia y no competencia. El recurrido fungía en la empresa como especialista de servicios y brindaba personalmente los servicios de control de plaga a múltiples clientes de la empresa. Según indicó, en agosto de 2025, el recurrido concluyó su relación de empleo con Rentokil. En resumen, la referida cláusula establecía que, durante el término del contrato y hasta por doce (12) meses después de cesar labores con la peticionaria, el recurrido se obligaba a no realizar ciertas acciones

---

[2] Véase entrada núm. 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[3] Íd., entrada núm. 3.
[4] Íd., entrada núm. 5.
[5] Véase entrada núm. 1 del expediente digital del caso en el SUMAC-TPI.

allí enumeradas, en cualquier área geográfica de Puerto Rico en donde este brindó servicios.

Así las cosas, la peticionaria adujo que, el recurrido estuvo en contacto directo con información confidencial, listado de clientes, estrategias de negocio, ideas y secretos comerciales de la empresa que lo capacitaron para competir con ésta. Arguyó que, el recurrido se ha dedicado al mismo tipo de negocio que la peticionaria y compite por los mismos clientes, muchos de los cuales fueron clientes de Rentokil, atendidos por el recurrido. En particular, alegó que varios de sus clientes, alrededor de veinte, han cancelado su servicio con Rentokil debido a que el recurrido le está ofreciendo sus servicios, al apropiarse de la información de la empresa para su propio beneficio. Por todo ello, argumentó que, el recurrido violó el contrato de confidencialidad y no competencia, causándole daños irreparables a Rentokil.

Tras varios trámites procesales, innecesarios pormenorizar, el 3 de octubre de 2025, el recurrido presentó una *Moción en Solicitud de Desestimación del Recurso Extraordinario de Injunction y Solicitud de Conversión al Procedimiento Civil Ordinario.*[6] Arguyó que, de la propia demanda, surge que los alegados daños son económicos, por lo que no se justifica la concesión del remedio extraordinario de *injunction.*

Ese mismo día, el recurrido presentó una *Moción en Solicitud de Desestimación al amparo de la Regla 10.2 de Procedimiento Civil.*[7] En esta, alegó que la referida cláusula de no competencia es nula. Adujo que, la misma es onerosa, irrazonable y excesivamente amplia al no delimitar un área geográfica por lo que contraviene los estándares jurisprudenciales establecidos para este tipo de cláusula. Sostuvo que, dicha cláusula no define cuáles son las

---

[6] Íd., entrada núm. 16.
[7] Íd., entrada núm. 17.

actividades específicas o listado de clientes en los cuales el recurrido no puede involucrarse.

El 10 de octubre de 2025, la peticionaria presentó una *Oposición a Moción en Solicitud de Desestimación del Recurso Extraordinario de Injunction y Solicitud de conversión al Procedimiento Civil Ordinario [SUMAC 16].*[8] Arguyó que, en este caso, el recurso de *injunction* procede porque el recurrido está incurriendo en una violación continua y clara de un acuerdo de no competencia válido y ejecutable, lo que representa un daño irreparable al interés comercial de la peticionaria.

Ese mismo día, la peticionaria presentó una *Oposición a Moción en Solicitud de Desestimación al amparo de la Regla 10.2 de Procedimiento Civil.*[9] En esta, adujo que, el recurrido induce a error al tribunal al solo hacer referencia a una parte de la cláusula del acuerdo de no competencia. Por su parte, sostuvo que la restricción está limitada a los clientes y áreas donde el recurrido brindó servicios por lo que dicha cláusula cumple con los requisitos establecidos jurisprudencialmente. Arguyó que dicha cláusula protege razonablemente los intereses comerciales legítimos de la empresa al restringir la competencia en las referidas áreas donde el recurrido prestó servicios y desarrolló relaciones con clientes. Por lo cual, alegó que la demanda establece una reclamación válida que justifica la concesión de un remedio.

El 15 de octubre de 2025, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, en esa etapa de los procedimientos.[10] El foro primario consideró que, a

---

[8] Íd., entrada núm. 20.
[9] Íd., entrada núm. 21.
[10] Íd., entrada núm. 25. Notificada y archivada digitalmente en autos el 16 de octubre de 2025.

tenor con el derecho aplicable, era necesario evaluar los planteamientos y alegaciones de las partes en una vista evidenciaria.

Ese mismo día, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la moción de desestimación del recurso de *injunction.*[11]

El 23 de octubre de 2025, en virtud de lo discutido en la *Vista* celebrada el 17 de octubre de 2025,[12] el TPI emitió una *Sentencia Parcial* mediante la cual acogió el desistimiento de la causa de acción de *injunction* por lo que convirtió el procedimiento a uno ordinario y le concedió un término a la peticionaria para presentar una demanda enmendada.[13]

El 30 de octubre de 2025, la peticionaria presentó una *Demanda Enmendada.*[14] En esta, alegó que el recurrido ofrecía servicios de control de plagas a múltiples clientes de la peticionaria, principalmente, en el área sur y oeste de Puerto Rico. Adujo que, como especialista de servicios de Rentokil, el recurrido estuvo en contacto con información confidencial, listado de clientes, estrategias de negocios, ideas y secretos comerciales de la empresa que lo capacitaron para competir con esta. Arguyó que, luego de su renuncia, el recurrido se ha dedicado al mismo tipo de negocio que la peticionaria y, actualmente, compiten por los mismos clientes, muchos de los cuales fueron clientes de Rentokil, atendidos por el recurrido. Por ello, sostuvo que, el recurrido violó el contrato de confidencialidad y no competencia suscrito con la peticionaria.

El 6 de noviembre de 2025, el recurrido presentó una *Contestación a Demanda Enmendada.*[15] Alegó, afirmativamente, que la cláusula de interferencia y no competencia es nula de su faz e incumple con los requisitos jurisprudenciales aplicables. Admitió

---

[11] Íd., entrada núm. 26. Notificada y archivada digitalmente en autos el 16 de octubre de 2025.

[12] Íd., entrada núm. 30. Véase *Minuta* de la vista del 17 de octubre de 2025.

[13] Íd., entrada núm. 31. Notificada y archivada digitalmente en autos el 24 de octubre de 2025.

[14] Íd., entrada núm. 32.

[15] Íd., entrada núm. 34.

que, brindó servicios en el área oeste y suroeste. No obstante, adujo que, no tenía acceso a información confidencial, estrategias de negocios, ideas y secretos comerciales de Rentokil.

Tras varios trámites procesales, innecesarios pormenorizar, el 23 de enero de 2026, la peticionaria presentó *Moción para compeler la producción de información y documentos.*[16] En esta, indicó que le cursó un Primer Pliego de Interrogatorios y Requerimiento de Documentos al recurrido, en solicitud de información y documentos esenciales para la adjudicación de la controversia, incluyendo un listado de clientes y facturas relacionadas con los servicios prestados por el señor Rodríguez Fernández en su negocio. Señaló que, el recurrido se negó a producir dicha información, bajo el fundamento de que constituye un secreto comercial. Así las cosas, argumentó que dicha negativa es insuficiente y contraria a derecho dado que la peticionaria tiene una necesidad sustancial de la información requerida, conforme al derecho y jurisprudencia aplicable. Sostuvo que, el listado de clientes y las facturas relacionadas es relevante para determinar si el recurrido ha violado un acuerdo de no competencia válido y exigible, al proveer servicios a clientes de la peticionaria con los cuales tuvo relación durante su empleo con Rentokil. Mencionó que, le ofreció al recurrido acceder a adoptar medidas razonables para garantizar la protección de información confidencial, pero que, dicho ofrecimiento fue rechazado. Por lo cual, solicitó la intervención del TPI.

El 31 de enero de 2026, el recurrido presentó una *Oposición a Moción para que se nos ordene descubrir lo solicitado y Solicitud de orden protectora.*[17] Arguyó que, previo a la presentación de la *Demanda,* Rentokil debió contar con la información y prueba que sustente sus alegaciones, incluyendo el listado de los alegados

---

[16] Íd., entrada núm. 46.
[17] Íd., entrada núm. 48.

clientes que han cancelado sus servicios. Alegó que, la peticionaria presentó una demanda frívola y ausente de prueba y pretende, a través del descubrimiento de prueba, obtener información de los clientes del recurrido, la cual es privilegiada.

El recurrido solicitó una orden protectora pues alegó que Rentokil ha iniciado una expedición de pesca, proscrita por las Reglas de Procedimiento Civil, *supra*. Argumentó que, el listado de clientes de cualquier empresa o negocio constituye información confidencial, privilegiada y secreto de negocios, independientemente del volumen o tamaño del mismo, que, de no ser así, cualquier competidor obtendría una ventaja competitiva indebida del negocio del cual obtenga el listado de clientes.

El 5 de febrero de 2026, la peticionaria presentó una *Réplica a "Oposición a Moción para compeler la producción de información y documentos y Solicitud de orden protectora"*.[18] Alegó que, la información solicitada es el único medio razonable para probar una violación al acuerdo de no competencia pactado entre las partes. Asimismo, arguyó que, el recurrido intenta convertir el privilegio de secreto comercial en un escudo absoluto para evadir el descubrimiento de prueba e impedir que Rentokil pruebe adecuadamente sus reclamaciones, contrario al derecho aplicable vigente.

El 20 de febrero de 2026, el TPI emitió una *Resolución*.[19] En esta, declaró No Ha Lugar la solicitud de la peticionaria en torno a que se emita una orden al recurrido para que produjera su listado de clientes e información relacionada. El foro primario consideró que la peticionaria debía conocer de antemano, antes de radicar la demanda, cuáles son los aludidos clientes y poseer la prueba para sostener sus alegaciones. Por tanto, entendió que, si el recurrió

---

[18] Íd., entrada núm. 49.
[19] Íd., entrada núm. 50.

provee dicha información, ello constituye divulgar información confidencial y/o secreto de negocio del recurrido. Ante ello, emitió una Orden Protectora sobre la referida información.

Inconforme, la peticionaria presentó el recurso de *Certiorari* de epígrafe, en el que formuló los siguientes señalamientos de error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL DECLARAR NO HA LUGAR A LA MOCIÓN PARA COMPELER LA PRODUCCIÓN DE INFORMACIÓN Y DOCUMENTOS SIN REALIZAR EL ANÁLISIS REQUERIDO POR EL ARTÍCULO 11(C) DE LA LEY NÚM. 80-2011, 10 L.P.R.A. § 4139(C), LA REGLA 513 DE EVIDENCIA Y LA DOCTRINA ESTABLECIDA EN *PONCE ADVANCE MED. GRP. NETWORK, INC. V. SANTIAGO GONZÁLEZ*, 197 D.P.R. 891 (2017), IMPIDIENDO EL DESCUBRIMIENTO DE PRUEBA INDISPENSABLE QUE OBRA EXCLUSIVAMENTE EN PODER DEL DEMANDANDO-PETIOCIONADO (sic).**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA PARTE DEMANDANTE DEBÍA CONOCER LA IDENTIDAD DE LOS CLIENTES ANTES DE RADICAR LA DEMANDA Y, CON BASE EN ELLO, DENEGAR EL DESCUBRIMIENTO SOLICITADO.**

En este, alegó que el listado de clientes y las facturas relacionadas, es directamente relevante para determinar si el recurrido violó un acuerdo de no competencia válido y exigible, al proveer servicios a clientes de Rentokil con los cuales tuvo relación durante su empleo. Adujo que, en virtud del inciso (c) del Artículo 11 de la *Ley para la Protección de Secretos Comerciales e Industriales de Puerto Rico*, Ley Núm. 80 de 3 de junio de 2011, 10 LPRA sec. 4131 (Ley Núm. 80-2011) y del caso ***Ponce Adv. Med. V. Santiago*** González, 197 DPR 891 (2017), la divulgación de información designada como secreto comercial puede ser ordenada por el tribunal cuando se demuestra una necesidad sustancial.

Arguyó que, la determinación del foro primario convierte un privilegio cualificado en uno absoluto, omite el análisis que el

Tribunal Supremo exige y priva a la peticionaria del único medio razonable para probar su caso. Por ello, manifestó que la resolución recurrida constituye un error de derecho y un abuso de discreción que ameritan su revocación.

De otra parte, alegó que el efecto práctico de la orden recurrida no es regular el descubrimiento de prueba, sino suprimirlo por completo. Adujo que, dicha determinación, la coloca en una posición procesal imposible para probar un incumplimiento cuya evidencia se encuentra exclusivamente en manos del recurrido, negándosele a la peticionaria acceso a dicha evidencia.

Por su parte, el recurrido presentó su oposición. Arguyó que TPI actuó dentro de su discreción, aplicó correctamente el derecho vigente y protegió los intereses comerciales legítimos del recurrido. Adujo que, la resolución recurrida no suprime el descubrimiento de prueba, sino que lo regula para evitar su uso indebido por una parte que carece de prueba básica para sostener sus alegaciones. El recurrido sostuvo que, forzar la divulgación del listado de clientes y su facturación crearía un riesgo real de daño irreparable, aun bajo acuerdos de confidencialidad. Por lo que, solicitó que se denegara la expedición del auto.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. supra, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. *IG Builders et al. v.*

***BBVAPR***, 185 DPR 307, 338 (2012). No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada*, **In re Aprob. Enmdas. Reglamento TA***, 2025 TSPR 141, pág. 63, 216 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[20]

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". ***Rodríguez v. Pérez***, 161 DPR 637, 651 (2004); ***Banco Metropolitano v. Berríos***, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". ***Citibank et al. v. ACBI et al.***, 200 DPR 724, 735 (2018); ***García López y otro v. E.L.A.***, 185 DPR 371, 394 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". ***Citibank et al. v. ACBI et al.***, supra;

---

[20] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*Medina Nazario v. McNeil Healthcare LLC,* supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.,* supra. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". *Citibank et al. v. ACBI et al.*, supra, pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**B.**

La Regla 23.1 de Procedimiento Civil, *supra*, R. 23.1, regula el amplio alcance que poseen las partes en el descubrimiento de prueba, el cual se permite sobre cualquier materia no privilegiada que sea pertinente al caso en controversia. En esencia, el descubrimiento de prueba es el mecanismo disponible para que las partes obtengan hechos, documentos y otras cosas que están en poder de la otra o que son del exclusivo conocimiento de esta y son necesarias para hacer valer sus derechos. *McNeil Healthcare v. Mun. Las Piedras II,* 206 DPR 659, 672 (2021), citando a I. Rivera

García, *Diccionario de términos jurídicos*, 3ra ed. rev., San Juan, Ed. LexisNexis, 2000, pág. 70.

Como mecanismo, responde al principio básico de que las partes tienen derecho a descubrir, previo al juicio, toda la información relacionada con su caso, independientemente de quién la posea. **Rivera y otros v. Bco. Popular**, 152 DPR 140, 152 (2000). En ese sentido, tiene como propósito: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. **Rivera Gómez v. Arcos Dorados Puerto Rico**, 212 DPR 194, 203 (2023) (citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6.a ed., San Juan, Ed. LexisNexis, 2017, págs. 333–334).

Es norma reiterada en nuestro ordenamiento jurídico que, el descubrimiento de prueba debe ser amplio y liberal. **Izquierdo II v. Cruz**, 213 DPR 607, 616 (2024); **Rivera et al. v. Arcos Dorados et al.**, 212 DPR 194, 203 (2023). Cónsono con ello, los foros primarios tienen amplia discreción para regularlo, mientras que los foros apelativos no deben intervenir con esa discreción, a menos que medie prejuicio, parcialidad o error manifiesto en la aplicación de normas procesales o sustantivas. **Cruz Flores et al. v. Hosp. Ryder et al.**, 210 DPR 465, 496 (2022).

**C.**

Respecto al privilegio sobre los secretos de negocio, la Regla 513 de Evidencia, 32 LPRA Ap. VI, R. 513, dispone lo siguiente:

> La dueña o el dueño de un secreto comercial o de negocio tiene el privilegio -que podrá ser invocado por ella o por él o por la persona que es su agente o empleada- de rehusar divulgarlo y de impedir que otra persona lo divulgue, siempre que ello no tienda a encubrir un fraude o causar una injusticia. Si fuere ordenada su divulgación, el Tribunal deberá tomar aquellas medidas necesarias para proteger los

intereses de la dueña o del dueño del secreto comercial, de las partes y de la justicia.

Dicho privilegio responde al interés de proteger la libre empresa, al garantizar a los dueños el derecho de rehusarse a divulgar o de impedir que un tercero divulgue información secreta sobre su comercio o negocio, salvo que la confidencialidad aducida, constituya un subterfugio para encubrir un fraude o causar una injusticia. *Ponce Adv. Med. v. Santiago González*, supra, pág. 901.

La Ley Núm. 80-2011, *supra*, regula los aspectos sustantivos de los secretos del negocio. Según dicha Ley lo define, un secreto comercial es toda información de la cual se deriva un valor económico independiente, ya sea actual o potencial, debido a que la misma no es de conocimiento común o accesible por medios apropiados por aquellas personas que puedan obtener un beneficio pecuniario del uso o divulgación de dicha información y que ha sido objeto de medidas de seguridad, según las circunstancias, para mantener su confidencialidad. Artículo 3 de la Ley Núm. 80-2011, *supra*, sec. 4132; *Ponce Adv. Med. v. Santiago González*, supra, pág. 906.

En particular, el Artículo 11 de la Ley Núm. 80-2011, *supra*, sec. 4139, provee para que, en acciones instadas al amparo de dicha ley, el tribunal preserve la confidencialidad del secreto comercial y tome las medidas cautelares que entienda necesaria, entre otras, emitir una orden protectora. Antes de ordenar el descubrimiento de una información designada como un secreto comercial, el Tribunal deberá determinar si la parte que solicita el descubrimiento tiene una necesidad sustancial de la información. Se entenderá que existe "necesidad sustancial" si se presentan las siguientes circunstancias:

"i. las alegaciones presentadas con el fin de establecer la existencia o ausencia de responsabilidad han sido presentadas de manera específica;

ii. la información que se busca descubrir es directamente relevante a las alegaciones presentadas de manera específica;

iii. la información que se busca descubrir es tal, que la parte que busca su descubrimiento quedaría sustancialmente perjudicada si no se le permite acceso a la misma; y

iv. existe una creencia de buena fe de que el testimonio o evidencia que se derive de la información que forma parte del Secreto Comercial será admisible en el juicio." Artículo 11(c) de la Ley Núm. 80-2011, *supra.*

El tribunal no ordenará acceso directo a bases de datos que contengan información que forme parte de un secreto comercial a menos que encuentre que el proponente del descubrimiento no puede obtener dicha información por ningún otro medio y que la información no está sujeta a ningún privilegio. Íd.

En ***Ponce Adv. Med. v. Santiago González***, supra, el Tribunal Supremo delimitó el alcance del privilegio de secretos del negocio y pautó el estándar para invocar y conceder un privilegio probatorio. En particular, estableció lo siguiente:

> [l]a parte que se considere poseedora de cierta materia privilegiada cuyo descubrimiento se procura, deberá, tan pronto se solicite la información: (1) objetar la producción de los documentos, las comunicaciones o los objetos requeridos; (2) indicar expresamente el privilegio específico que pretende invocar; (3) exponer con particularidad los hechos concretos en los que se basa la aplicabilidad del privilegio; (4) fundar con claridad la existencia de los elementos legales del privilegio en cuestión, y (5) describir la naturaleza de la evidencia no producida de forma tal que, sin revelar la información privilegiada, permita a otras partes evaluar su reclamación. Íd., pág. 900.

**IV.**

En el presente caso, la peticionaria argumenta que el TPI incidió al no permitirle descubrir información alegadamente indispensable, en poder exclusivo del recurrido, para determinar si este último violó un acuerdo de no competencia. Alega que, el TPI convirtió un privilegio cualificado en uno absoluto, omitiendo el

análisis establecido jurisprudencialmente y privándola del único medio razonable para probar su caso.

Tras un análisis objetivo, sereno y cuidadoso del expediente y de la petición de *certiorari*, y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos abstenernos de ejercer nuestra función revisora discrecional y rechazar intervenir con la determinación del TPI. No intervendremos, en esta etapa de los procedimientos, con la determinación recurrida.

**V.**

Por los fundamentos pormenorizados, se deniega la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones